**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARY E. HAMMOND,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 03-2407 (JDB)** |
| **ELAINE L. CHAO, SECRETARY OF** | |
| **THE U.S. DEPARTMENT OF LABOR** | |
| **Defendant.** | |

## MEMORANDUM OPINION

Plaintiff Mary E. Hammond filed suit under Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e et seq., as amended ("Title VII"), alleging that defendant Elaine L. Chao,

Secretary of the U.S. Department of Labor ("defendant" or "DOL"), discriminated against her on

the basis of her race and sex when it selected a white male applicant to fill the position of Lead

Manpower Development Specialist.  Plaintiff also alleges that defendant retaliated against her

when it failed to submit a supervisory assessment for plaintiff, which was a prerequisite to

acceptance into the Employment Training Administration's Excellence in Leadership Program.

Defendant has moved to dismiss plaintiff's Complaint, or in the alternative, for summary

judgment.  For the reasons set forth below, defendant's motion for summary judgment will be

granted.

## BACKGROUND

The following facts are uncontroverted, excepted as noted.  Plaintiff is an African-

American female who has been employed by defendant as a Senior Manpower Development

Specialist at the GS-13 level since 1991.  Pl. Ex. 1, Hammond Application for Federal

Employment ¶ 10.  On June 5, 2000, defendant announced a vacancy for a Lead Manpower

Development Specialist, GS-142-14, position in the National Emergency Grants Division of the

Employment and Training Administration ("ETA").  See Def. Ex. 1, Vacancy Announcement

ETA-00-115 ("Vacancy Announcement").  Plaintiff applied for the position on June 15, 2000.

See Pl.  Ex.  2, Hammond EEOC Affidavit.  The selecting official was George Shephard, Jr., an

African-American male, who was at that time the Chief of the Division of National Emergency

Grants in ETA.  Def. Ex. 9, Declaration of George Shephard, Jr. ("Shephard Decl.") ¶¶ 1-2.  Mr.

Shephard interviewed a total of eight candidates, including both plaintiff and the selectee,

Richard Praeger, a white male.  Def. Ex. 2, Certificate of Eligibles.  After reviewing applications

and conducting interviews, Mr. Shephard concluded that Mr. Praeger was best qualified for the

position.  Shephard Decl. ¶¶  3-8, 11.  On November 15, 2000, Mr. Shephard offered the position

to Mr. Praeger and informed plaintiff that she had not been selected.  See Def. Ex. 5, Notice of

Non-Selection.  Plaintiff filed an administrative complaint with the DOL Civil Rights Center on

January 19, 2001, alleging that her non-selection was the result of discrimination based on her

race, age and sex.  Pl. Ex. 14, Administrative Complaint.

In May or June of 2002, plaintiff and a co-worker, Thaddeus Roberts, applied for the

DOL Excellence in Leadership Program ("ELP").  Shephard Decl. ¶ 12.  ELP enables

participants who successfully complete the program to receive a two-year Certificate of

Eligibility for one noncompetitive promotion within ETA to the next higher grade supervisory

position.  Def. Ex. 7, Excellence in Leadership Program Description.  Both plaintiff and Mr.

Roberts asked Mr. Shephard to complete a supervisory assessment form that was required to be

2

submitted with the ELP applications.  Id.  Mr. Shephard did not complete the forms for either

employee.  Id.  As a result, both plaintiff and Mr. Roberts were denied admission to the program.

Plaintiff then amended her administrative complaint on September 30, 2003, to include an

allegation that she was retaliated against when Mr. Shephard failed to complete the supervisory

assessment for her ELP application. Def. Ex. 8, Amended Administrative Complaint.

On July 29, 2003, Equal Employment Opportunity Commission ("EEOC")

Administrative Judge Wallace Lew issued a decision dismissing all of plaintiff's claims.  Def.

Ex. 10, EEOC Administrative Judge Decision.  Defendant adopted the EEOC's decision on

August 20, 2003, and sent plaintiff a right-to-sue letter reflecting that decision.  Def. Ex. 11,

Agency Final Action.  Defendant mailed plaintiff's right-to-sue letter on August 20, 2003 via

Federal Express, and designated an August 21, 2003 delivery.  Def. Ex. 15, Federal Express

envelope label.  The date upon which the letter arrived at plaintiff's home is a point of

contention.  According to defendant, the right-to-sue letter was delivered to plaintiff's residence

on August 21, 2003.  Id.; Def. Ex. 12, Declaration of Naomi Barry-Perez ("Barry-Perez Decl.")

and attachments (Federal Express receipts).  On the other hand, plaintiff states that the letter did

not arrive at her home until August 22, 2003.  Pl. Ex. 21, Second Declaration of Mary E.

Hammond ("Hammond Decl.") ¶ 11; see also Pl. Ex. 22, Declaration of Constantin Nkesela

("Nkesela Decl.") ¶¶ 4-6.

Plaintiff commenced the instant action against defendant on November 20, 2003.

Defendant moved for dismissal of or, in the alternative, summary judgment on plaintiff's claims

on March 3, 2004, arguing, inter alia, that plaintiff's action should be dismissed because she

failed to comply with the Title VII 90-day statute of limitations for filing a civil action in federal

court.  The Court denied defendant's motion, but explained that defendant could renew the

motion following discovery on the limited issue of when plaintiff received her EEOC right-to-sue

letter.  <u>See</u> October 29, 2004 Order.  After completion of discovery, defendant renewed its

motion to dismiss or, in the alternative, for summary judgment.  Defendant again argues that

plaintiff's action should be dismissed as untimely.  Defendant also claims that if plaintiff's action

is timely, it is nonetheless entitled to summary judgment because plaintiff is unable to show that

defendant's explanation for non-selection was a pretext for discrimination.  Defendant also

asserts that plaintiff cannot establish a prima facie case on her retaliation claim because she was

not subjected to an adverse employment action and because she cannot show a causal connection

between her EEOC activity and the complained of denial of ELP admission.

## <u>LEGAL STANDARD</u>

### I.      **Summary Judgment Standard**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law."  Fed.R.Civ.P. 56(c).  The party seeking summary judgment bears the initial

responsibility of demonstrating the absence of a genuine dispute of material fact.  <u>See</u> <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The moving party may successfully support its

motion by "informing the district court of the basis for its motion, and identifying those portions

of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

fact."  <u>Id.</u> (quoting Fed.R.Civ.P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude

summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.

## II.      The McDonnell Douglas Framework

The Court analyzes plaintiff's discrimination and retaliation claims based on race and sex pursuant to the familiar burden-shifting analysis set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  First, a plaintiff has the burden of establishing a prima facie case of discrimination or retaliation by a preponderance of the evidence.  Id. at 802; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  In order to make out a prima facie case of discrimination a plaintiff must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002) (quoting Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)).  To establish a prima facie case of retaliation, a plaintiff must show: "(1) that she engaged in statutorily protected activity, (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two." Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985) (quoting McKenna v. Weinberger, 729

F.2d 783, 790 (D.C. Cir. 1984)); accord Brown v. Brody, 199 F.3d at 452.

If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  McDonnell Douglas, 411 U.S. at 802.  The employer's burden, however, is merely one of production.  Burdine, 450 U.S. at 254-55.  The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  Id.

If the employer is successful, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination or retaliation.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).  The plaintiff "may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'"  Id. (quoting Burdine, 450 U.S. at 256).  But "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination."  Reeves, 530 U.S. at 147.  Thus, the trier of fact may also "consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'"  Id. (quoting Burdine, 450 U.S. at 255 n.10).  "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors . . . includ[ing] the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law."  Reeves, 530 U.S. at 148-49.  As the D.C. Circuit has explained:

>Assuming then that the employer has met its burden of producing a nondiscriminatory reason for its actions, the focus of proceedings at trial (and at summary judgment) will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc); see also

Waterhouse v. District of Columbia, 298 F.3d 989, 992-993 (D.C. Cir. 2002).

Although the "intermediate evidentiary burdens shift back and forth" under the McDonnell-Douglas framework, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves, 530 U.S. at 143 (quoting Burdine, 450 U.S. at 253). Once the defendant has proffered a legitimate non-discriminatory reason for its action, then, the question is whether that proffered reason is a pretext for discrimination, and at this point the McDonnell Douglas shifting burdens framework disappears, the sole remaining issue is discrimination vel non, and "to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003); see Reeves, 530 U.S. at 142-43. Examination of that issue in this setting therefore requires consideration of all the relevant circumstances in evidence, including the strength of the prima facie case, any direct evidence of discrimination, any circumstantial evidence that defendant's proffered explanation is false (which may be enough with the prima facie case to infer unlawful discrimination), and any properly-

7

considered evidence supporting the employer's case.  Reeves, 530 U.S. at 147-48; see also

Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1151 (D.C. Cir. 2004); Lathram, 336 F.3d at

1089; Waterhouse, 298 F.3d at 993; Aka, 156 F.3d at 1290.

## ANALYSIS

### I.   Statute of Limitations

Title VII requires that plaintiffs file suit within 90 days of receiving notice from the

EEOC of their right to sue. 42 U.S.C. § 2000e-5 (f)(1).  The 90-day period is not, however,

jurisdictional, but rather operates like a statute of limitations, which is an affirmative defense.

See  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982). Because a challenge to

plaintiff's timeliness is an affirmative defense, defendant bears the burden of proof of

establishing the facts supporting this defense.  See Martin v. Alamo Community College Dist.,

353 F.3d 409, 412 (5th Cir. 2004) (recognizing that defendant bears burden of establishing

affirmative defense that plaintiff's Title VII suit was untimely filed).  Here, defendant has moved

to dismiss plaintiff's case for failure to timely file her Complaint with this Court within the 90-

day time period, when she filed her Complaint on November 20, 2003, 91 days after she

allegedly received her right to sue letter on August 21, 2003.  Plaintiff counters that she actually

received the letter on August 22, 2003, making her Complaint timely.

In support of its argument, defendant provides a copy of the Federal Express envelope

that shows plaintiff's right to sue letter was mailed on August 20, 2003, and designated for

overnight delivery.  Def. Mem., Ex. 15.  Defendant also includes a copy of a website that shows a

package with a tracking number of "834407313775" was delivered to plaintiff's address on

August 21, 2003 at 10:05 am.  Id., Ex. 12.  That tracking number corresponds to the same

tracking number on the envelope containing plaintiff's right to sue letter.  Defendant contends

this evidence is conclusive that plaintiff's right to sue letter arrived on August 21, 2003, thus

making her Complaint untimely.  Plaintiff, on the other hand, has testified that she received the

right to sue letter on August 22, 2003, when she found it by her door upon returning from work.

 See Def. Mem., Ex. 16, Deposition of Mary Hammond ("Hammond Dep.") at 6.  She states that

on August 21, 2003, when she returned from work, she did not have any mail from Federal

Express on her doorstep.  Id. at 13.  She has provided an affidavit stating, under penalty of

perjury, that she received the letter on August 22nd.  Pl. Opp'n, Ex. 1, Second Declaration of

Mary Hammond ("Second Hammond Dec.") ¶¶ 7-11.  Plaintiff also includes an affidavit from

Constantin Nsekela, who according to plaintiff lived with her in August 2003.  Mr. Nsekela

stated, under penalty of perjury, that he did not see a Federal Express letter on August 21, 2003,

at plaintiff's home, nor did he see one on the morning of August 22, 2003.  Pl. Opp'n, Ex. 2,

Declaration of Constantin Nsekela ("Nsekela Dec.") ¶¶ 4-6.

When weighing this conflicting evidence, the Court is guided by the burden of proof,

which on an affirmative defense is borne by defendant.  Here, defendant has failed to establish

conclusively that the right to sue letter was received by plaintiff on August 21, 2003.  Although

the evidence proffered by defendant is credible, it is insufficient when viewed in light of

plaintiff's testimony and affidavit.  Defendant's proof of delivery evidence shows that no one at

plaintiff's residence signed for the package upon delivery.  Moreover, defendant does not offer

any evidence regarding the accuracy of Federal Express's tracking information, or the reliability

of Federal Express's deliveries.  Instead, defendant's only evidence of an August 21, 2003

delivery is a copy of the tracking number information.  Of course, plaintiff's evidence does raise

some concerns as well.  In particular, the Court is struck by the exacting detail of the Nesekela

declaration given that a month before the declaration was signed, plaintiff testified that she

believed Mr. Nesekela was at her home on August 21, 2003, but "might have been inebriated."

Hammond Dep. at 16.  She also characterized Mr. Nsekela as an "alcoholic," id. at 17, and a

month before he signed the affidavit she was not sure where he was located, or how to get in

touch with him, id. at 16.   Notwithstanding these shortcomings, however, the Court concludes

that defendant has failed to meet its burden of establishing the affirmative defense of limitations

on the record before the Court.

## II.    Discrimination Claim for Non-Selection

In order to state a prima facie case of discrimination for non-selection under Title VII,

plaintiff must show that (1) she is a member of a protected class; (2) she applied for and was

qualified for an available position; (3) despite her qualifications she was rejected; and (4) either

someone filled the position or the position remained vacant and the employer continued to seek

applicants.  See McDonnell Douglas, 411 U.S. at 802; Waters v. Gonzales, 2005 WL 1514430, at

*6 (D.D.C. June 22, 2005).  Plaintiff has established a prima facie case of racial and sex

discrimination, creating a presumption of discrimination.  It is undisputed that plaintiff, an

African-American woman, is a member of two protected classes and that she was qualified for

the GS-142-14 position for which she applied.  Morever, it is uncontroverted that plaintiff was

not selected, and that defendant offered Mr. Praeger, a white male, the position.

Under the McDonnell Douglas framework set forth above, the burden then shifts to the

defendant to rebut the prima facie case by coming forward with legitimate, non-discriminatory

reasons for its personnel decision.  See Burdine, 450 U.S. at 254-55.  According to defendant,

after reviewing all the applications and conducting interviews, the selecting official, Mr.

Shephard, determined that the selectee, Mr. Praeger, was the best candidate for the position. See

Shephard Decl. ¶ 11.  In detailing the selection process, Mr. Shephard noted that Mr. Praeger was

more qualified than plaintiff with regard to all five evaluation factors set forth in the vacancy

announcement.[1]  See id. ¶¶ 3-8.  Specifically, Mr. Shephard emphasized Mr. Praeger's breadth of

experiences, including work in the Office of National Emergency Grants, Office of Trade

Adjustment Assistance, and Interstate Conference of Employment Security Agencies, as well as

membership in the workgroup that drafted guidelines for the Workforce Investment Act.  See id.

Furthermore, Mr. Shephard believed that Mr. Praeger's expertise with the requisite administrative

laws, regulations, and policies was superior to that of plaintiff.  See id.  Finally, Mr. Shephard

thought Mr. Praeger, through his previous work experience, exhibited greater management skills

than plaintiff.  See id.

Beyond the KSAs, at the time of selection Mr. Shephard was also concerned that plaintiff

did not work independently and relied too heavily on a contract employee to do her work.  See id.

¶10; Def. Ex. 14, George Shephard Affidavit ("Shephard Affidavit") at 4, ¶ 13.  According to Mr.

Shephard, the ability to work independently was an important consideration because a Lead

Manpower Specialist position involves "many situations where decisions have to be made and

---

[1] The five evaluative factors ("KSAs") for the Lead Manpower Specialist position
included: (1) knowledge of employment and training programs and activities including
knowledge of the dislocated workers programs; (2) knowledge of the range of administrative
laws, regulations, policies, and precedents as they pertain to the Workforce Investment Act; (3)
ability to coordinate the efforts of a functional team and to develop technical assistance
materials; (4) ability to provide guidance to senior staff in the identification and resolution of
program designs that positively impact States and locals [sic] with respect to dislocated worker
programs; (5) knowledge in planning and directing team work and negotiation with management
to implement recommendations for improvements.  See Vacancy Announcement.

time does not allow for consultations."  Shephard Affidavit at 4, ¶ 13.  Mr. Shephard was also

concerned, at the time of selection, about a complaint in 1999 from an entry-level employee who

accused plaintiff of making some derogatory remarks.  See id. at 5, ¶ 13.  Mr. Shephard

counseled plaintiff and the entry-level employee together, reiterating the need for effective

communication and mutual respect in the Division.  Id.  While Mr. Shephard acknowledged that

plaintiff apologized to the new staff person, he did not feel that the characteristics exhibited by

plaintiff during this prior incident were becoming of an individual who might have to act on his

behalf as Lead Manpower Specialist.  Id.

Because defendant has satisfied the burden of coming forward with a legitimate, non-

discriminatory reason for plaintiff's non-selection, the presumption of discrimination created by

plaintiff's prima facie case drops out and the burden shifts back to plaintiff to present evidence

indicating that the proffered reason is simply pretext for unlawful discrimination.  See Burdine,

450 U.S. at 256.  Plaintiff's evidence of pretext is that she is so clearly more qualified for the

Lead Manpower Specialist position than the selectee that an inference of discrimination arises

from the mere fact that she was not selected.  See Pl. Opp. 9-13.  Plaintiff argues that her

application is superior to that of Mr.  Praeger with respect to all five evaluation factors listed in

the vacancy announcement.  Id.  In fact, plaintiff notes that Mr. Praeger fails to even address

some of the factors listed by the DOL as required for the position.  Id.

"Where a plaintiff's qualifications are so vastly superior than the selectee's, this may be

considered as evidence of pretext, casting doubt on the legitimate, non-discriminatory

explanation offered by the employer and creating a question of material fact."  Choates v. Powell,

265 F. Supp.2d 81, 95 (D.D.C. 2003).  However, a plaintiff cannot satisfy her burden of

demonstrating pretext "simply based on [her] own subjective assessment of [her] own performance." Waterhouse v. District of Columbia, 124 F. Supp. 2d 1, 7 (D.D.C. 2000), aff'd, 298 F.3d 989 (D.C. Cir. 2002) (citing Smith v. Chamber of Commerce of the United States, 645 F. Supp. 604, 608 (D.D.C. 1986)).  A plaintiff has the duty to put forth evidence of discrimination, not to "quibble about the candidates' relative qualifications." Vasilevsky v. Reno, 31 F. Supp. 2d 143, 150 (D.D.C. 1998).  In the absence of any other evidence that would allow a jury to infer that discrimination took place, "slight questions of comparative qualifications do not warrant a jury trial." Walker v. Dalton, 94 F. Supp. 2d 8, 16 (D.D.C. 2000).

Here, plaintiff offers only her subjective, unsupported assertion that she was the best candidate for the position.  Plaintiff argues, in part, that she has more years of experience in employment and training programs, possesses a more extensive knowledge of administrative law, regulations, policies and precedents as it pertains to the Workforce Investment Act, and is more capable of providing guidance to senior staff with respect to Dislocated Workers programs.  See Pl. Opp. 10-12.  However, the Court will not second-guess an employer's personnel decision "unless the disparities in qualifications 'are so apparent as to virtually jump off the page and slap [it] in the face.'" Choates, 265 F. Supp. 2d at 95 (quoting Odom v. Frank, 3 F.3d 839, 846 (5th Cir. 1993)).  No such disparity exists in this case.  The record is clear that plaintiff was not vastly more qualified than Mr. Praeger, and therefore the Court must respect the employer's unfettered discretion to choose among qualified candidates. See, e.g., Fischbach, 86 F.3d at 1183 ("Even if a court suspects that a job applicant was 'victimized by [] poor selection procedures' it may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'")(citations omitted). "Title VII, it bears repeating, does not authorize a federal court to

13

become 'a super-personnel department that reexamines an entity's business decisions.'" Barbour

v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting Dale v. Chicago Tribune Co., 797

F.2d 458, 464 (7th Cir. 1986)).

　　　Although plaintiff quibbles about her comparative qualifications based on the application

forms, the selecting official made clear that his decision was also based on  factors outside the

application, including the oral interview process and his personal knowledge of the candidates.

See Shephard Affidavit at 2, ¶ 9.[2]  Plaintiff attacks defendant's justifications as pretext by arguing

that the personal knowledge relied upon by Mr. Shephard concerning plaintiff was false.  See

Reeves, 530 U.S. at 148 ("[A] plaintiff's prima facie case, combined with sufficient evidence to

find that the employer's asserted justification is false, may permit the trier of fact to conclude that

the employer unlawfully discriminated").  Plaintiff denies that she relied too heavily on a contract

employee and disputes Mr. Shephard's account of an incident where an entry-level employee

complained about plaintiff's behavior.  See Pl. Opp. at 13-14.  Although the specific facts as to

plaintiff's reliance on a contract worker and the specified incident of misconduct with the entry-

level employee are in dispute, these facts are immaterial for purposes of this motion for summary

judgment.  Even if Mr. Shephard's personal knowledge of plaintiff is incorrect, the issue "is not

the correctness or desirability of reasons offered . . . [but] whether the employer honestly believes

in the reasons it offers." Fischbach, 86 F.3d at 1183 (quoting McCoy v. WGN Continental

---

[2] It bears notice that Mr. Shephard is an African-American and is therefore in the same
protected racial class as plaintiff.  This fact weighs against an inference of discrimination.  See
Walker, 94 F. Supp. 2d at 16 (finding no inference of pretext where one of the three panel
members who ranked the applicants was of the same protected class as plaintiff); Horvath v.
Thompson, 329 F.Supp.2d 1, 5 (D.D. C. 2004) (harder to establish gender discrimination when
selecting official same gender as plaintiff).

14

Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992)).  Plaintiff has presented no evidence

demonstrating that Mr. Shephard did not rely in good faith on his personal observations of

plaintiff.  Because plaintiff offers no other evidence to attack defendant's explanation as

pretextual, and indeed offers no other evidence from which a jury could infer discriminatory

intent on the part of defendant, the Court must grant summary judgment in favor of defendant on

this claim.

## III.     Retaliation Claim

Plaintiff also claims that she was subject to retaliation in violation of Title VII for filing a

charge of discrimination with the EEOC.  To establish a prima facie case of retaliation, a plaintiff

must show that she engaged in a statutorily protected activity, the employer took an adverse

personnel action, and there is a causal connection between the protected activity and the adverse

personnel action.  See Brown, 199 F.3d at 452; Mitchell, 759 F.2d at 86.  Plaintiff's claim of

retaliation is based on Mr. Shephard's failure to complete a supervisory assessment form that was

a prerequisite to acceptance into the Excellence in Leadership Program ("ELP").  See Compl. ¶

23.  Plaintiff asserts that there is a causal connection between the protected activity and this

alleged adverse employment action because Mr. Shephard had been interviewed by the EEOC

counselor and knew of plaintiff's participation in the EEOC process.  See Pl. Opp. at 15.

Although plaintiff certainly engaged in statutorily protected activity, she has failed to

establish that she suffered an adverse employment action related to her protected activity.   First,

it is questionable whether Mr. Shephard's failure to complete the assessment form for plaintiff

actually constitutes an adverse employment action.  The D.C. Circuit has emphasized that

adverse employment actions involve "ultimate employment decisions such as hiring, granting

leave, discharging, promoting, and compensating," not intermediate decisions "having no immediate effect upon employment conditions."  Taylor v. FDIC, 132 F.3d 753, 764 (D.C. Cir. 1997) (internal quotations omitted).  Specifically, to meet the adverse employment action requirement, a plaintiff must make a clear showing that the action resulted in an "objectively tangible harm." Brown, 199 F.3d at 457.  Even if Mr. Shephard had completed the assessment form, there is no guarantee that plaintiff would have been accepted into the program.  Moreover, even if plaintiff had been accepted, there is no guarantee that she would have completed the program successfully.  See Def. Ex. 7, ELP Program Materials ("individuals not progressing as expected can be removed from the program").  Lastly, even if plaintiff had successfully completed the program, there is no guarantee that she would be promoted or selected for a supervisory position as a result of having participated in the program and receiving a certificate of eligibility for promotion.  See id. ("participation in the Excellence in Leadership Program does not guarantee selection or promotion for supervisory/managerial positions").  In light of the speculative nature of the ELP and its subsequent benefits, it is difficult to argue that Mr. Shephard's failure to submit the prerequisite supervisory form -- an action three steps removed from plaintiff receiving some form of tangible benefit -- constitutes an adverse employment action.

Nonetheless, assuming arguendo that Mr. Shephard's failure to submit the supervisory form does constitute an adverse employment action, plaintiff has not established a causal connection between her filing an EEOC complaint and that adverse employment action.  To qualify as a causal connection the temporal proximity between the employer's knowledge of the protected activity and the adverse personnel action must be "very close." Clark County Sch. Dist.

v. Breeden, 532 U.S. 268, 273 (2001).  Although plaintiff's supervisor, Mr. Shephard, was aware of plaintiff's January 2001 EEOC complaint when he failed to submit the supervisory assessment in June 2002, the year-and-a-half gap is too great to permit temporal proximity alone to establish a causal connection.  See id. (citing with approval cases that found temporal proximity of four and three months insufficient to demonstrate a causal connection); Baker v. Potter, 294 F. Supp. 2d 33, 41 (D.D.C. 2003) (two-month gap is insufficient to establish temporal proximity); Garrett v. Lujan, 799 F. Supp. 198, 202 (D.D.C. 1992) (holding that nearly a year "between plaintiff's EEO activity and the adverse employment decision is too great to support an inference of reprisal").  Moreover, Mr. Shephard's failure to submit a supervisory assessment for plaintiff's co-worker, Mr. Roberts, who was not engaged in any EEO activity, is evidence which strongly cuts against the existence of a causal connection between plaintiff's EEO activity and her complained of employment action.  See Shephard Decl. ¶ 12.  Indeed even if plaintiff could establish a prima facie case of retaliation, defendant's explanation that Mr. Shepard simply forgot because of a heavy workload to submit applications for plaintiff and Mr. Roberts (a white male) is a non-retaliatory reason as to which plaintiff cannot establish pretext.  Because, ultimately, plaintiff has failed to establish a prima facie case of retaliation, the Court grants defendant's motion for summary judgment on the retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court holds that plaintiff's claims of discrimination and retaliation fail as a matter of law.  Accordingly, the Court grants defendant's motion for summary judgment on both claims.  A separate order has been issued.

_____/s/ John D.  Bates_____
JOHN D.  BATES
United States District Judge


Dated:  _August 10, 2005_____



Copies to:

**Olivia Desiree Cammack**
THE LAW OFFICE OF OLIVIA D. CAMMACK, P.A.
8605 Cameron Street
Silver Spring, MD 20910
Phone: (301) 608-0055
Fax: (301) 608-2226
Email: ocammack@aol.com

**Megan Lindholm Rose**
UNITED STATES ATTORNEY'S OFFICE
555 Fourth Street, NW
Room E-4220
Washington, DC 20530
Phone: (202) 514-7220
Email: megan.rose@usdoj.gov

**Uldric L. Fiore, Jr.**
UNITED STATES ATTORNEY'S OFFICE
555 Fourth Street, NW
Washington, DC 20530
Phone: (202) 307-0299
Fax: (202) 514-8780
Email: uldric.fiore@usdoj.gov